**TRINITY SERVICES, INC., et al., Plaintiffs,**

v.

**W. J. USERY, Secretary of Labor, and Thomas C. Reed, Secretary of Air Force, Defendants.**

**Civ. A. No. 76–1993.**

United States District Court, District of Columbia.

Nov. 24, 1976.

Gordon P. MacDougall, Washington, D.C., Al Millar, Jacksonville, Fla., for plaintiffs.

Malcolm Goldstein, New York City, William G. Mahoney, Washington, D.C., for plaintiff Transport Workers Union of America.

Robert Werdig, Asst. U.S. Atty., Washington, D.C., for defendants Usery and Reed.

Gerald I. Sommer, Washington, D.C., for Service Employees International Union.

## MEMORANDUM

GESELL, District Judge.

In this action, Trinity Services, Inc., and two Unions with which it has collective bargaining agreements, seek declaratory and injunctive relief contending that the Secretary of Labor has improperly authorized competitive bidding on two Government contracts now held by Trinity. Plaintiffs assert that the Secretary has violated the provisions of the Service Contract Act, 41 U.S.C. §§ 351 et seq. Bids on these contracts are to be opened at 10:00 a. m. and 2:00 p. m. today. The matter came before this Court on plaintiffs' motion for prelimi-nary injunction, defendants' response, supporting affidavits from both sides, and full oral argument. With the agreement of the parties, the controversy will be resolved as if before the Court for final action on cross-motions for summary judgment.

For several years, Trinity Services, Inc. has had a contract with the United States Air Force to provide custodial services at Cape Canaveral Air Force Station, and Patrick Air Force Base, Florida. To provide the contracted-for services, Trinity has employed members of the Transport Workers Union of America (TWUA) and the Service Employees International Union (SEIU), and has entered into collective bargaining agreements with their respective locals.

Trinity's contract with the Air Force is about to expire. Competitive bidding for a new contract to supply substantially the same services is now under way. Pursuant to the Service Contract Act, the Secretary of Labor has issued a series of complex wage determinations. All bids and contracts accepted by the Government must conform to these determinations, which must include wages and specific fringe benefits taken from the collective bargaining agreement between Trinity and its employees. The Secretary's determinations (73–535 (Rev. 7) and 73–794 (Rev. 4)) include most of the wage and other benefits contained in the existing labor contracts.

The present controversy arises primarily[1] because the following provision in each of Trinity's labor contracts has been excluded from the wage determinations:

Article XXVI § 10.

It is the intention of this Article that any successor to the instant contract, whether it be Trinity Services, Inc. or any other contractor shall be in exactly the same position with respect to severance pay liability for any employees that it may elect to terminate for reasons other than permitted by this Article. The incumbent contractor and its successor shall be deemed the same for the purpose of determining severance pay liability and

1. Also apparently excluded are some "seniority rights" which are also at issue in this action.

loss of the contract to a successor shall not be considered a severance. Conversely, refusal to hire by a successor for reasons other than permitted by this Article shall be considered a severance for which the successor shall be liable.

Plaintiffs assert that this provision is a fringe benefit which must be recognized by the Secretary's wage determination, 41 U.S.C. § 351(a), and must be included in any contract signed by a successor contractor. 41 U.S.C. § 353(c). It is uncontested that all fringe benefits, or their equivalents, must be included in the wage determination and new contract, unless "after a hearing in accordance with regulations adopted by the Secretary that such wages and fringe benefits are substantially at variance with those which prevail for services of a character similar in the locality." 41 U.S.C. § 353(c). However, the Government contends that the excluded provision is not a "fringe benefit," and that it was placed in the collective bargaining agreement to make it economically impossible for any company to underbid Trinity. It suggests, in effect, that this provision is in the nature of a "sweetheart" arrangement designed to perpetuate the position of Trinity and its current employees.

■ The contested severance provision tends to force any successor contractor to retain the current custodial employees. It requires a successor contractor to maintain the present work force, or pay a severance indemnity. The Government contends that the Service Contract Act did not intend to burden a successor contractor with an existing work force, and that, therefore, this provision cannot be a "fringe benefit" under the Act.

The severance provision (and the noted seniority rights) was bargained for, and was not required by statute or regulation. It would seem to fall within the expansive conception of "fringe benefit" contained in the Act.[2] The Service Contract Act was intended to "provide much needed labor standards protection for employees . ." (S.Rep. No. 798, 89th Cong., 1st Sess. (1965), p. 1; H.Rept. 948, 89th Cong., 1st Sess. (1965), p. 1; U.S.Code Cong. & Admin.News 1965, p. 3737), and to insure "that the Federal Government shall not be a party to the depressing of labor standards in any area of the nation." (111 Cong.Rec. 24387 (1965), Cong. O'Hara, co-author of the Act.) Before passage of the Act incumbent contractors were consistently underbid for new contracts by companies promising lower costs achieved through lower wages. The Act, therefore, required successor contractors to give workers the same wages and benefits as were given by the incumbents. Unless the contested severance provision is made a part of the wage determination, it will be to the advantage of a successor contractor to dismiss the current custodial work force. By replacing workers who have accrued seniority, a successor contractor can cut his wage costs. If permitted, this would allow contractors to keep the actual wage paid for custodial work artificially depressed. It also gives new contractors a bidding advantage over the incumbents who must, of necessity, pay their workers for accrued seniority. Each time a contract expires and is opened to bidding, a new contractor can underbid the incumbent by planning to fire all the senior workers who must be paid higher wages. Through the severance provision at issue here, the custodial employees have bargained themselves out of this dilemma. Including the severance provision in the wage determination would fully comport with the goals of the Service Contract Act. Nor would this protection of labor standards remove the possibility of competitive bidding for service contracts, as the Government suggests. It would only prevent competitive bidding based on the arbitrary dismissal of senior

2. "Such fringe benefits shall include medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, unemployment benefits, life insurance, disability and sickness insurance, accident insurance, vacation and holiday pay, costs of apprenticeship or other similar programs and other bona fide fringe benefits not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor." 41 U.S.C. § 351(a)(2).

employees. The Court, then, can see no reason why the severance provision is not a "fringe benefit" under the terms of the Act.

Of course, the Secretary need not recognize fringe benefits in a collective bargaining agreement if they are inconsistent with prevailing local standards. Congress intended that the Secretary reject any provision which was not a bargained for benefit, but, rather, one designed to obstruct subsequent competitive bidding. The Act, however, contemplates that such a determination be made after a hearing. No hearing was held in this instance. Before the Secretary can exclude the severance provision and seniority rights from the wage determinations here, a hearing must be held and proper findings made in accordance with the statute. Therefore, the Court declares that the wage determinations for the competitive bidding on custodial service contracts at Cape Canaveral and Patrick Air Force Base (73–535 (Rev. 7) and 73–794 (Rev. 4)) have been improperly issued by the Secretary of Labor under the Service Contract Act. The Secretary of the Air Force is hereby enjoined from opening the bids or awarding new contracts until a valid wage determination has been issued.